IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,

    v.

STEVE A. MCBEE,

            Defendant.

Case No.   24-00241-01-CR-W-SRB

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Teresa A. Moore, United States Attorney, Bradley Cooper, Special Assistant United States Attorney, and the defendant, Steve A. McBee ("the defendant"), represented by Berkowitz Oliver LLP through Jeff D. Morris and Blake P. Saffels.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count One of the Information charging him with a violation of 18 U.S.C. § 1014, that is, Federal Crop Insurance Fraud. The defendant also admits the Allegation of Criminal Forfeiture in the Information, and agrees to forfeit the property described therein, agreeing as a component of this Plea Agreement to a criminal monetary penalty of forfeiture in the amount of $3,158,923, while acknowledging

the offset agreement referenced herein concerning unpaid benefits. By entering into this plea agreement, the defendant admits he knowingly committed this offense, and is in fact guilty of this offense.

3. **Factual Basis for Guilty Plea**.

The parties agree that the government's evidence constituting the offense to which Mr. McBee is pleading guilty includes the following:

Beginning on approximately January 1, 2018, and continuing through approximately June 30, 2019, in the Western District of Missouri and elsewhere, the defendant, Steve A. McBee, knowingly caused a false statement or report to be made for the purpose of influencing in any way the action of Rain and Hail, a company reinsured by the Federal Crop Insurance Corporation ("FCIC"), to wit: the defendant caused the submission of a Proof of Loss to Rain and Hail for the 2018 crop year, and caused the submission of certified Production Worksheets, which falsely underreported his total 2018 corn crop and soybean crop production by a material amount, and MCBEE acknowledges the Proof of Loss and Production Worksheets caused the pay-out of approximately $2,605,943 in federal crop insurance benefits, to which he was not entitled due to the underreporting; federal crop insurance premium subsidies of approximately $552,980 to which he was not entitled; and caused the FCIC to pay administrative cost to Rain and Hail which the FCIC would not have paid but for the defendant's false statements to the federal crop insurance program, in violation of Title 18, United States Code, Sections 1014 and 2.

### Federal Crop Insurance

The United States Department of Agriculture (USDA) is a department of the United States, and was established to support the production of agriculture. Congress passed the Federal Crop Insurance Act (FCIA) "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance." To carry out this purpose, Congress created the Federal Crop Insurance Corporation (FCIC), which is a wholly-owned government corporation, to administer the FCIA, for the purpose of providing government insurance against unavoidable crop losses.

Congress authorized FCIC to utilize private insurance companies in providing crop insurance to the nation's farmers. These private insurance companies sell and service Multiple Peril Crop Insurance (hereinafter referred to as Crop Insurance) policies to farmers. FCIC reinsures Crop Insurance policies sold by private insurance companies to farmers. Rain and Hail is one such private insurance company. The Crop Insurance program provides insurance coverage to farmers against natural crop losses. FCIC reimburses private insurance companies for indemnity payments made to the insured farmers, in accordance with the terms and conditions of a reinsurance agreement between FCIC and the insurance companies, and subsidizes a portion of the farmer's federal crop insurance premiums. The FCIC also reimburses the private insurance companies for their administrative costs.

MCBEE, as the individual in charge of farm matters during that time period, caused application be made for Federal Crop Insurance with Rain and Hail, for McBee corn and soybean crops in 2018 and the application was granted. As a result, the FCIC subsidized a portion of the McBee crop insurance premium to Rain and Hail, and pursuant to the re-insurance agreement between FCIC and Rain and Hail, paid that portion of Rain and Hail's administrative costs associated with MCBEE's federal crop insurance. To receive a crop insurance indemnity payment, the insured must submit a "Proof of Loss" and must provide complete harvesting, production, and marketing records for each insured crop and on acreage which was not insured.

## MCBEE's 2018 Farming Operation

In 2018, MCBEE was an owner of and supervised farm operations of McBee Farms, LC and Honey Creek Ranch, LLC ("McBee farming operations"). MCBEE, for McBee farming operations, entered into a contract with agricultural product company Indigo Ag. Inc. (Indigo) in 2018. Per the contract, McBee farming operations bought all their seed for corn and soybeans from Indigo. MCBEE planted only Indigo corn and soybeans in McBee fields in 2018. The contract further stipulated that McBee farming operations would sell back all the corn and soybeans harvested during 2018 to Indigo and deliver the corn and soybeans to grain elevators on behalf of Indigo. McBee farming operations kept Indigo updated throughout the 2018 harvest with the number of bushels that had been harvested and placed into storage, which allowed Indigo to know how much income to expect from crops delivered by the McBee farming operations. 2018 was a growing season affected by drought, and so yield numbers were reduced for most Missouri farms.

MCBEE admits that McBee farming operations, which were headquartered in Gallatin, Missouri, sold approximately 1,241,116 bushels of corn and 415,969 bushels of soybeans to Indigo for the 2018 season. MCBEE admits that crop insurance records signed, or approved, by him reported that McBee cultivated fields in its farming operations produced only 340,476 bushels of corn and 190,171 bushels of soybeans.[1]

MCBEE caused a "Proof of Loss" to be submitted to Rain and Hail for the 2018 corn and soybean crops on which he had purchased federal crop insurance. Each Proof of Loss submitted by the McBee farming operations included a "Production Worksheet" in which a representative from McBee farming operations certified that the information provided in the Production Worksheet was "true and complete," that the individual signing the document understood that the crop insurance was subsidized by the Federal Crop Insurance Corporation (FCIC), and that any false claims or false statements were subject to criminal penalties.

MCBEE admits he knowingly caused false statements and reports be made to Rain and Hail, in that MCBEE submitted, or caused others to submit, certified Proofs of Loss that included false production worksheets to Rain and Hail in which MCBEE knowingly underreported the total 2018 McBee corn and soybean crop. The difference between what was reported and

---

[1] MCBEE did buy corn and soybeans that were grown with non-Indigo seed from other farmers to compensate for the shortage he encountered on the amount of grain he was contractually required to sell to Indigo. But the use of stored or acquired grain does not fully address the difference between what was reported for crop insurance, and what was sold to Indigo.

what was sold to Indigo is approximately 674,812 bushels of corn, and approximately 155,833 bushels of soybeans. As a result, MCBEE was paid federal crop insurance benefits to which he was not entitled.

## Relevant Conduct

### *2019- Double Cropping Soybeans*

In 2019, McBee farming operations planted and harvested wheat in Daviess County, Missouri, which is located in the Western District of Missouri.[2] After the wheat was harvested, McBee farming operations planted soybeans in those same fields in Daviess County. In early 2019, the defendant applied for Federal Crop Insurance with Rain and Hail for the McBee farm operations soybean crop. Rain and Hail insured MCBEE's soybean crops in 2019. MCBEE's Rain and Hail crop insurance policy only allowed insurance coverage on the first crop planted on a piece of land during a given crop year. In 2019, the first and only insurable crop for certain fields was wheat, and per Rain and Hail's policy, MCBEE's soybean crop in certain fields was not insurable.

MCBEE admits that he marketed and sold the wheat he harvested in 2019 to various grain elevators in the Western District of Missouri. MCBEE further admits that during the COVID-19 pandemic in 2020 he submitted a Coronavirus Food Assistance Program ("CFAP") application. The CFAP provided financial assistance to producers of agricultural commodities to allow them the ability to absorb sales declines and increased marketing costs associated with the COVID-19 pandemic. MCBEE reported producing 50,100 bushels of wheat in 2019.

As a result of the double cropping during the 2019 crop year, MCBEE was paid federal crop insurance benefits to which he was not entitled.

### *2020- False Plant Dates*

In 2020 MCBEE obtained crop insurance through NAU Country Insurance. As part of the crop insurance, the farmer must submit an Acreage Report to the insurance provider reporting all acreage planted. The insured farmer must declare on the Acreage Report the location, date of planting, number of acres planted, and their share of the insured crop. The farmer must sign the Acreage Report certifying that all the information is entirely accurate, and the document is submitted to the insurance company through the farmer's crop insurance agent.

Special provisions in the insurance policy specify various dates applicable to the crop insurance policy. For corn, there is a final planting date for crop insurance, which is the last day to plant an insured corn crop in order to receive the full level of insurance guarantee. Corn that is not planted by the final plant date can still be planted during the late planting period, but the amount of insurance coverage is reduced. In 2020, the last plant date for corn in Missouri was May 25, 2020. The late planting period in Missouri ended on June 14, 2020. Any corn planted after June 14, 2020, was not insurable.

---

[2] The following entities comprised the McBee farming operations in 2019: McBee Farms, LC; Honey Creek Ranch, LLC; and Timber Creek Farms, LLC.

MCBEE admits that McBee 2020 farming operation[3] planted corn in some fields after the last planting date in 2020. MCBEE further admits that he knowingly caused other McBee farming employees to provide inaccurate plant dates on crop insurance documents to NAU Country Insurance. Because of the inaccurate and false plant dates provided by the MCBEE farm operations, fields planted with corn and soybeans received the full amount of insurance from NAU Country Insurance when those crops should not have been insured because the crops were planted after the late planting period.

As a result of the false statements, MCBEE was paid federal crop insurance benefits to which he was not entitled.

### *Summary*

Below is a table, broken down by year, that represents the claimed total loss to the USDA's Risk Management Agency (RMA) based on MCBEE's false statements in 2018-2020. The total loss claimed by the government is $4,022,123.

|  | Indemnity Payments | Subsidized Premiums | Administrative and Operating Costs |
|---|---|---|---|
| 2018 | $2,605,943 | $552,980 | $120,363 |
| 2019 | $431,951 | $59,676 | $12,576 |
| 2020 | $136,966 | $82,613 | $19,055 |
| TOTAL | $3,174,860 | $695,269 | $151,994 |

Pursuant to 18 U.S.C. § 3663(a)(3), MCBEE agrees to pay restitution as ordered by the Court.[4]

As a component of the Plea Agreement, MCBEE consents to pay a money judgment of forfeiture in the amount of $3,158,923.

**4.** **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the

---

[3] In 2020 the McBee farming operation consisted of the following entities: McBee Farms, LC; Honey Creek Ranch, LLC; Timber Creek Farms, LLC; and McBee Family Farms.

[4] The parties agree that if MCBEE receives any crop insurance indemnity payments for claims submitted for the 2021, 2022, or 2023 crop years, those funds will be applied to any amount owed as the criminal monetary penalty of forfeiture or restitution.

5

defendant's offense level in accordance with U.S.S.G. § 1B1.3. The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the Information as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3 in calculating the offense level for the charge to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon his plea of guilty to Count One of the Information charging him with Federal Crop Insurance fraud, the maximum penalty the Court may impose is not more than 30 years of imprisonment, a $1,000,000 fine, five years of supervised release, an order of restitution, and a $100 mandatory special assessment, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class B felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to five years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

    d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to three years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed five years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

6

e.   the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

f.   any sentence of imprisonment imposed by the Court will not allow for parole;

g.   the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office;

h.   the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court;

i.   Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that the United States will use the financial information when making its recommendation to the Court regarding the defendant's acceptance of responsibility;

j.   At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of forfeitable assets and restitution;

k.   The defendant agrees that the United States may institute civil, judicial, or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that he will not contest any such forfeiture proceedings;

l.   The defendant agrees to forfeit all interests he owns or over which he exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p) (which is applicable to this action pursuant to 18 U.S.C. § 982(a)(2) including but not limited to the following specific property: a money judgment in the amount of $3,158,923 representing proceeds the defendant obtained based on his participation in the count of conviction. With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution; and

7

m.  The defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before his sentencing.

**7.  Government's Agreements.**    Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant, any McBee farm entity identified herein, or any member of his family, for any federal criminal offenses related to Federal Crop Insurance fraud committed by the defendant from approximately January 1, 2018, through December 31, 2020, for which it has venue and which arose out of the defendant's conduct described above.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8

**8. Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

**9. Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

**10. Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

9

a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

b. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2B1.1(a)(1), which provides for a base offense level of seven;

c. The government contends the loss amount was greater than $3,500,000 but less than $9,500,000 resulting in an eighteen-level increase in the offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(J), MCBEE may agree or offer a contrary position at sentencing;

d. The parties agree that neither an upward nor downward adjustment should be applied pursuant to U.S.S.G. §§ 3B1.1 and 3B1.2;

e. There may or may not be other enhancements or reductions applicable under the Guidelines. The parties are free to argue as to the applicability of any additional enhancements or reductions under the Guidelines, and remain free to argue sentencing issues pursuant to the factors set forth in 18 U.S.C. § 3553;

f. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will either file a written motion or make an oral motion with the Court to that effect unless the defendant (1) fails to abide by all the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

g. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

h. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph nine of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

10

i. The United States agrees not to seek an upward departure from the Guidelines range or a sentence outside the Guidelines range. The defendant may request any sentence, including a sentence below the applicable Guidelines range. This agreement by the parties is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

j. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Information. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

k. The defendant understands and agrees that any factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11.** **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12.** **Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

11

**13. Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charge in the information;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

**14. Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

    c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d. the right to confront and cross-examine the witnesses who testify against him;

    e. the right to compel or subpoena witnesses to appear on his behalf; and

    f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant

12

answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights**.

     a.    The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

     b.    The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations**.    By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

     a.    The defendant agrees that the Court may order restitution to any victim of this offense and in connection with all other uncharged related criminal activity. Pursuant to 18 U.S.C. § 3663(a)(3), the defendant agrees to pay restitution as ordered by the Court.

     b.    The defendant and the United States agree that the defendant's criminal activity caused an economic loss to the USDA-RMA.

     c.    The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

d.   The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

e.   Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

f.   At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

g.   The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

h.   The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

i.   The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

j.   In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The

14

defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.**    The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.**    The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.**    If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute,

15

Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

**20.** **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

**21.** **Federal Assistance Consequences.** The defendant understands that pleading guilty may have consequences with respect to him obtaining or receiving benefits or financial assistance from agencies of the federal government. Debarment or ineligibility for federal assistance or benefits, including the ability to participate in federal crop insurance programs, is the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect his conviction will have on his ability to obtain or receive benefits or financial assistance from federal agencies. Defendant nevertheless affirms that he wants to plead guilty regardless of any consequences that his guilty plea may have on him receiving federal assistance. Further, the defendant understands that he is bound by his guilty plea regardless of any consequences the plea may have on obtaining government financial assistance and regardless of any advice the defendant has received from his counsel or others regarding those consequences. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on those consequences and agrees not to

16

seek to withdraw his guilty plea, or to file a direct appeal or collateral attack of any kind challenging his guilty plea, conviction, and sentence on this basis.

22. **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Teresa A. Moore
United States Attorney

Dated: *11-5-2024*

Bradley Cooper
Special Assistant United States Attorney

17

I have consulted with my attorney and fully understand all of my rights with respect to the offense charged in the Information. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated:     11-5-24

_____
Steve A. McBee
Defendant

I am defendant Steve A. McBee's attorney. I have fully explained his rights with respect to the offense charged in the Information. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Steve A. McBee's decision to enter into this plea agreement is an informed and voluntary one.

Dated:     11·5·24

_____
Jeff D. Morris
Attorney for Defendant

18