# Steve A. McBee

# Case No. 24-002410-01-CR-W-SRB

# ATTACHMENT 3

# SENTENCING MEMORANDUM

**FEDERAL PUBLIC DEFENDER**
District of Arizona
850 West Adams Street, Suite 201
PHOENIX, ARIZONA 85007

JON M. SANDS
Federal Public Defender

(602) 382-2700
1-800-758-7053
(FAX) 382-2800

March 13, 2007

Honorable Ricardo H. Hinojosa
Chair
United States Sentencing Commission
One Columbus Circle, N.E.
Suite 2-500, South Lobby
Washington, D.C. 20002-8002

Re:     Comments on Criminal History Issues

Dear Judge Hinojosa:

With this letter, we provide comments on behalf of the Federal Public and
Community Defenders on the two issues for comment relating to criminal history that
were published on January 30, 2007.

I.      MINOR OFFENSES

· In its current formulation, U.S.S.G. § 4A1.2(c) directs a sentencing court to count
all felony offenses for purposes of calculating a defendant's criminal history score. A
felony offense is defined as "any federal, state, or local offense punishable by death or a
term of imprisonment exceeding one year, regardless of the actual sentence imposed."
§ 4A1.2(o). Misdemeanor and petty offenses are generally counted except that the fifteen
offenses listed in subsection (c)(1) and offenses similar to them, "by whatever name they
are known," are counted only if they resulted in a sentence of a term of probation of at
least one year or a term of imprisonment of at least thirty days. This list includes the
common minor offenses of disorderly conduct, driving without a license or with a
revoked or suspended license, insufficient funds check, local ordinance violations, and
resisting arrest. *See* § 4A1.2(c)(1). A number of other offenses, such as truancy and
minor traffic infractions, are never counted. *See* § 4A1.2(c)(2).

It appears that the Commission intended that the most common petty offenses that
tend to be summarily disposed of by the sentencing authority should not increase a
defendant's criminal history score unless the circumstances surrounding the violation
resulted in a sufficiently severe deprivation of liberty by the jurisdiction whose interests
were at stake. In operation, however, § 4A1.2(c) routinely operates to sweep in
misdemeanor and petty offenses for which little or no real punishment or active

1

(212)

supervision was imposed, in a manner that both creates unwarranted disparity and defies common sense.

A study on the recidivism rates for defendants whose previous convictions were for minor offenses is mentioned in one of the recidivism reports, but that study either has not been completed or the data has not been published. *See* U.S. Sentencing Commission, *Recidivism and the First Offender* at 5 n.14 (May 2004). Meanwhile, our experience tells us that § 4A1.2 consistently over-captures minor and petty offenses that likely do not accurately reflect a defendant's risk of recidivism but affect thousands of defendants across the country by significantly increasing their sentences through elevated criminal history categories and loss of eligibility for the safety valve. In addition, the application of the guideline has become a labor- and time-intensive exercise, difficult for judges, probation officers, and defense attorneys alike. The complexity created by this guideline promotes less accurate decision-making at the time of both plea and sentencing, generates confusion about the sentence a given defendant faces, and gives rise to more appeals.

We believe that misdemeanor and petty offenses should never be counted, even if they are considered felonies under subsection (o) because they are punishable by more than one year of imprisonment. The Commission also should adopt an expansive test for "offenses similar to them," one that encourages common sense judgments and discourages exclusive reliance on a strict elemental analysis. We offer the following proposed amendment to § 4A1.2(c):

Proposal 1:

    (c)    Sentences Excluded

Sentences for the following prior offenses and for offenses similar to them are not counted:

    Contempt of court
    Disorderly conduct or disturbing the peace
    Driving without a license or with a revoked or suspended license
    False information to a police officer
    Fare evasion
    Fish and game violations
    Gambling
    Hindering or failure to obey a police officer
    Hitchhiking
    Insufficient funds check
    Juvenile status offenses and truancy
    Leaving the scene of an accident
    Local ordinance violations
    Loitering
    Minor traffic infractions (*e.g.*, speeding)
    Motor vehicle offenses, other than drunk driving or driving while intoxicated

2

Non-support
Panhandling
Possession of marijuana
Prostitution
Public intoxication or open container
Resisting arrest
Shoplifting
Trespassing
Vagrancy.

Application Note: *Because of the differences among state statutory schemes, some minor offenses may carry labels or punish conduct that is not specifically listed in this guideline. In determining whether an offense is similar to an offense listed in subsection (c), the court should examine all possible factors of similarity. These factors include, but are not limited to, a comparison of maximum authorized punishment for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the punishment actually imposed or served for the unlisted offense, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct. No single factor is dispositive. If a conviction arises from conduct that is analogous to the types of offenses listed here, a court should err on the side of treating it as a minor offense.*

By eliminating reliance on the sentence imposed as the dividing line between minor offenses that are counted and minor offenses that are not counted, this approach would draw a bright line that is easily applied. It would eliminate the disparity caused when an offense defined by a state as a misdemeanor is counted as a felony under the guideline and the disparity reflected in the sentences imposed for the same offense in different courts. It would eliminate the time-consuming efforts devoted to determining the impact of myriad minor state offenses, which do not often correlate in any meaningful way to the defendant's culpability for the federal offense or risk of recidivism. It would eliminate the need for defendants to depend on a judge's willingness to grant a downward departure for overrepresentation of criminal history in § 4A1.3, the denial of which is insulated from review. It would set forth an appropriately expansive test for similarity. It would streamline federal sentencing and allow sentencing courts to dedicate their time to other, more relevant issues in determining the appropriate sentence.

In the alternative, we offer the following proposal:

Proposal 2:

(c)    Sentences Counted and Excluded

(1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the prior conviction was for an adult offense committed after the defendant had attained the age of 18; (B) the sentence actually served was a term of imprisonment for more than 60 days;

3

and (C) the offense was committed within three years prior to the commencement of the instant offense:

> False information to a police officer
> Hindering or failure to obey a police officer
> Resisting arrest.

(2) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted:

> Contempt of court
> Disorderly conduct or disturbing the peace
> Driving without a license or with a revoked or suspended license
> Fare evasion
> Fish and game violations
> Gambling
> Hitchhiking
> Insufficient funds check
> Juvenile status offenses and truancy
> Leaving the scene of an accident
> Local ordinance violations
> Loitering
> Minor traffic infractions (*e.g.*, speeding)
> Motor vehicle offenses, other than drunk driving or driving while intoxicated
> Non-support
> Panhandling
> Possession of marijuana
> Prostitution
> Public intoxication or open container
> Shoplifting
> Simple possession of marijuana
> Trespassing
> Vagrancy.

Application Note: *Because of the differences among state statutory schemes, some minor offenses may carry a label or punish conduct that is not specifically listed in this guideline. In determining whether an offense is similar to an offense listed in subsection (c)(1) or (c)(2), the court should examine all possible factors of similarity. These factors include, but are not limited to, a comparison of maximum authorized punishment for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the punishment actually imposed or served for the unlisted offense, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct. No single factor is dispositive. If a conviction arises from conduct that is analogous to the types of offenses listed here, a court should err on the side of treating it as a minor offense.*

4

Although this proposal does not set forth the bright-line approach of Proposal 1, it addresses the unwarranted disparities and unnecessary complexities that § 4A1.2(c) currently produces. We discuss below the current state of § 4A1.2 and explain why the Commission should make the changes we propose.

A.    State misdemeanor offenses punishable by more than one year in prison

Some states have misdemeanor offenses that are counted under subsection (c)(1) only because they are punishable by more than one year. As the guidelines currently read, these convictions are always counted as felonies, regardless of the sentence imposed. For example, in Pennsylvania, resisting arrest is a misdemeanor punishable by up to two years in prison. *See* 18 Pa. C.S. §§ 1104, 5104. In Iowa, resisting arrest can be charged as a misdemeanor aggravated assault even when there is no intent to injure and no injury, and is punishable by up to two years in prison. *See* Iowa Code §§ 708.3A(3)-(4), 903.1(2); *State v. Dawdy*, 533 N.W. 2d 551, 556 (Iowa 1995). In South Carolina, "failure to stop for a blue light" is a misdemeanor punishable by 90 days to three years. *See* S.C. Code Ann. § 56-5-750. In Maryland, passing a bad check to obtain goods or services is a misdemeanor punishable by up to eighteen months in prison. *See* Md. Code Ann. § 8-106. And in Massachusetts, leaving the scene of an accident with property damage, Mass. Gen. L. c. 90, § 24(2)(a), operating to endanger (analogous to careless or reckless driving), Mass. Gen. L. c. 90 § 24(2)(a), and resisting arrest, Mass. Gen. L. c 268 § 32B, are misdemeanors punishable by up to two-and-a-half years in the house of correction. Because a previous conviction for any of these offenses in states that do not punish the offense with imprisonment for more than one year are not counted unless the sentence was a term of probation of at least a year or a term of imprisonment of at least thirty days, while a conviction for the same offenses under the law of the states described above always count, the guidelines institutionalize the unwarranted disparity that the Commission aims to avoid in implementing its statutory directives.

The same problem has even more dire consequences with respect to predicates for the career offender guideline, U.S.S.G. §§ 4B1.1 and 4B1.2, and for enhancements based on prior felony convictions under § 2K2.1(a)(1)-(4). In these states, a misdemeanor conviction for resisting arrest is usually considered a felony conviction for a crime of violence, and convictions for assault and battery routinely count as career offender predicates. We look forward to an opportunity to address this distressing anomaly when the Commission addresses the career offender guidelines next amendment cycle.

In the meantime, the Commission should prevent convictions for minor offenses from being counted solely because they arose in a state where misdemeanors are punishable by more than one year.

In a case currently pending in the District of Massachusetts, the defendant pled guilty in state court to trespassing, disorderly conduct, and resisting arrest. He was fined $100. The conviction for resisting arrest will drastically increase the defendant's guideline range from 57-71 months to 262-327 months, solely because it is punishable by

5

two and a half years. In another Massachusetts case, a defendant was convicted of possessing with intent to distribute 6.4 grams of cocaine base. He had been previously convicted in Massachusetts of drug trafficking and, on two separate occasions, resisting arrest. The latter convictions resulted from a diagnosed mental condition. In one of the resisting arrest cases, the defendant was fined $100; in the other, he was given six months probation. In the federal case, the defendant's guideline range without the career offender enhancement would have been 70 to 87 months. But because his Massachusetts convictions for resisting arrest counted as convictions for felony crimes of violence, he was classified as a career offender and his guideline range jumped to 262 to 23$\overline{7}$ months.

In Pennsylvania, a defendant was convicted of possession with intent to distribute 10 grams of heroin. He had two prior second-degree misdemeanor convictions, punishable by a maximum of two years. One was a "walkaway" escape and the other resisting arrest.1 Both are considered crimes of violence for career offender purposes. Together, these prior misdemeanor offenses increased the defendant's sentencing range from 30-37 months to 151-188. He was sentenced to 151 months.

These examples are far from unusual in states that authorize imprisonment of more than one year for misdemeanors.

B.      Driving without a license or with a suspended or revoked license

There are several problems with including motor vehicle offenses, particularly if they can be excluded only if the sentence was probation of less than a year or imprisonment of less than thirty days. One is that some states impose virtually automatic sentences of more than thirty days' imprisonment or probation of at least one year. For example, for a number of years, Tennessee punished any second offense of driving on a suspended license with a mandatory minimum sentence of forty-five days' imprisonment. *See, e.g.*, Tenn. Code Ann. § 55-7-116 (1986). The statute was later amended so that a mandatory term of imprisonment now applies only when the previous suspension resulted from certain enumerated vehicular offenses, *see* Tenn. Code Ann. § 55-50-504(a)(2) (2006), but many defendants whose only countable criminal history was a second conviction for driving on a suspended license under the prior state law received at least one criminal history point, and if they were on probation when they committed the instant offense, they were ineligible for safety valve relief.

Another problem is the very common scenario for many of our clients where they fail to pay a minor traffic ticket or fine, which results in a suspended license. Driving on a suspended license then becomes an occupational hazard: they must work to earn the money to get their license reinstated, but they must drive to get to work. As a result, it is typical for clients to have one or more convictions for driving with a suspended license, for which a typical sentence is probation for one year. If the defendant was under that term of probation — even if it was unsupervised — at the time he committed a federal drug

---

1 The "walkaway escape" arose during a police encounter at a friend's house. The defendant was handcuffed and told to stay put while the police officers looked for a stolen stereo. When the officers went outside, he walked away.

6

offense, he would be ineligible for safety valve, even though his only conviction was for driving with a suspended license. This is especially common in smaller cities and rural areas, where a car is essential to employment and basic daily living needs. In jurisdictions that levy substantial fines, such as California, the cost of getting a suspended or revoked license reinstated is beyond the financial reach for many of our clients, even those who are regularly employed, resulting in a vicious cycle of minor, regulatory convictions.

Further, as the Commission has recognized, the inclusion of non-moving violations in the criminal history score may have an unwarranted adverse impact on minorities without clearly advancing sentencing purposes. *See* U.S. Sentencing Commission, *Fifteen Years of Guidelines Sentencing* 134 (Nov. 2004). Many courts and commentators have recognized, and many studies have shown, that African Americans are stopped by the police and charged only with traffic offenses in disproportionate numbers, a phenomenon often called "driving while black." *See* Letter from Jon Sands to the Honorable Ricardo Hinojosa, United States Sentencing Commission, July 19, 2006, Memorandum Regarding Priorities at 19 (collecting authorities).

Driving without a license or with a revoked or suspended license should never be counted. These offenses do not reflect the type of conduct that bears on a defendant's likelihood of recidivism or danger to the community. The Commission should exclude all motor vehicle offenses other than drunk driving and driving while intoxicated.

C.    Diversionary dispositions for minor offenses

Some states use diversionary dispositions that do not involve findings of guilt and that involve no actual supervision during the diversionary period. For example, in Massachusetts, a disposition of "continuance without a finding" is routinely imposed for minor offenses. This disposition results in an ultimate dismissal without a finding of guilt. The First Circuit has held that when this disposition includes an admission of facts sufficient to warrant a finding of guilt, it is a "criminal justice sentence" for purposes of § 4A1.1(d). *See, e.g., United States v. Fraser*, 388 F.3d 371, 374-75 (1st Cir. 2004) (citing *United States v. Nicholas*, 133 F.3d 133, 135 (1st Cir. 1998)). District courts, in turn, treat continuances without a finding as sentences of probation that are countable under subsection (c)(1). As a result, a defendant whose entire criminal record consists of a minor offense such as operating with a suspended license, for which he or she received a one year continuance without a finding, and who committed a federal offense while that continuance was in effect (even if unsupervised) would receive three criminal history points and be ineligible for safety valve treatment.

New York uses a similar diversionary disposition, referred to as a "one-year conditional discharge." N.Y. Penal Law § 65.05. A conditional discharge does not require supervision by a probation officer or other supervisory authority and is one of the most lenient dispositions permissible under New York law. These diversionary sentences are given for the overwhelming majority of misdemeanor offenses prosecuted in New York. *See* 2000-2001 Crime and Justice Annual Report, http://criminaljustice.state.ny.us/crimnet/ojsa/cja_00_01/sec3.pdf    (80,000 such

7

dispositions in the year 2000 and nearly 70,000 in the year 2001). The Second Circuit has held that a one-year conditional discharge is equivalent to a one-year sentence of probation. *United States v. Ramirez*, 421 F.3d 159 (2d Cir. 2005). This interpretation, which produces illogical results, can have a devastating impact on federal defendants in New York.

In *United States v. Ramirez*, 421 F.3d 159 (2d Cir. 2005), the maximum allowable prison sentence for the offenses at issue (disorderly conduct and driving without a license) was fifteen days. *Id.* at 165. Had the defendant been sentenced to the maximum prison term, the offenses would not have counted for federal sentencing purposes. But because the defendant was sentenced to the more lenient one- year conditional discharge -- which has no condition except to stay out of trouble -- the offenses pushed him into a higher criminal history category.

The Second Circuit's interpretation means that a prior trespassing conviction in New York will receive no points if the defendant is sentenced to fifteen days' jail time. But if the defendant was given a one-year conditional discharge for the offense, which is not probation and does not require active supervision, he would receive at least one criminal history point and possibly more. This outcome not only defies common sense, but also the Commission's apparent intent to count only those offenses listed in subsection (c)(1) that result in a significant deprivation of liberty.

Other circuits have held that similar dispositions are the equivalent of "probation," regardless of the absence of supervision. *See United States v. Miller*, 56 F.3d 719, 722 (6th Cir. 1995) (holding that conditional discharge under Kentucky law is the "functional equivalent" of an unsupervised term of probation under U.S.S.G. § 4A1.1(d)); *Harris v. United States*, 204 F.3d 681, 682-83 (6th Cir. 2000) (Ohio's equivalent of a "conditional discharge" sentence qualifies as a term of probation of at least one year under § 4A1.2(c)(1)); *United States v. Lloyd*, 43 F.3d 1183, 1188 (8th Cir. 1994) (same for unsupervised conditional discharge under Illinois law for driving with suspended license); *United States v. Caputo*, 978 F.2d 972, 977 (7th Cir. 1992) (holding that although Illinois conditional discharge is "probation without the probation officer," this is a "distinction without a difference so far as the guideline exception is concerned"); *United States v. McCrudden*, 894 F.2d 338, 339 (9th Cir. 1990) ("The guidelines make no provision for treating 'unsupervised' probation as less than probation.").

In *United States v. Rollins*, 378 F.3d 535 (6th Cir. 2004), the defendant was convicted of driving without insurance in violation of Kentucky law. The only sentence available under state law for that offense was a fine. The court suspended most of the fine, and sentenced the defendant to a two-year conditional discharge. Had the defendant violated the terms of the conditional discharge, all the Kentucky courts could do would be to impose the balance of the fine, plus court costs. Under those circumstances, the conviction would not have counted under subsection (c)(2). But because most of the fine was suspended and the defendant received a conditional discharge instead, a majority of a Sixth Circuit panel held that the conditional discharge was the "functional equivalent of unsupervised release" and therefore countable. *Id.* at 538.

8

(2·19)

Significantly, the *Rollins* majority recognized that its interpretation has a "seemingly odd consequence," in that, had the defendant paid the fine, his sentence would not have been counted. *Id.* at 539. The court went on to state that "[i]t is not clear whether the Sentencing Commission anticipated this specific development when it imposed this bright-line rule about sentences of probation of a year or more." *Id.* at 539-40. The court suggested that any overrepresentation might have been rectified through a downward departure under § 4A1.3, but noted the unlikelihood that the district court would have granted such a request.

The absurd results in these cases is aggravated by the fact that defendants who receive diversionary dispositions typically are told by their state court lawyers that this disposition will not result in a conviction, and so readily agree to this resolution even when there is a viable claim of innocence. The possibility of a discretionary downward departure under § 4A1.3 is insufficient, as this "insulates the district court's decision from review and further limits the ability of wrongfully sentenced defendants to appeal to this court for legal correction." *Id.* at 583 (Moore, J., dissenting). Further, a downward departure, even if granted, cannot render a defendant eligible for safety valve relief.

The Guidelines should not count minor offenses based on the fact that a term of probation was imposed. At the very least, the Commission should amend § 4A1.2(c) so that diversionary dispositions, in whatever form, are never counted for minor offenses. This could be accomplished by adding the following language at the end of the section:

> Diversion from the judicial process for offenses listed in (c)(1) or those similar to them are never counted.

In the alternative, the Commission should replace the language in § 4A1.2(c)(1)(A) so that it reads, "the sentence was a term of supervised probation of more than one year," and clarify that "supervision" means active supervision by a probation office or other supervisory authority.

## D. Offenses "similar" to those listed in subsection (c)(1)

In several cases, courts have found an offense to be dissimilar to the offenses listed in subsection (c)(1) (and therefore countable), by engaging in legal acrobatics that defy the Commission's apparent intent to allow for relatively broad *categories* of similarity. For example, in *United States v. Laureano*, No. 05-2078, 162 Fed. Appx. 188 (3d Cir. Jan. 17, 2006), the defendant had been previously convicted under Pennsylvania law for operating a motor vehicle while possessing an open 22-ounce bottle of "Silver Thunder" malt liquor. The open container violation was punishable under state law by a fine, but not imprisonment, *id.* at 190, n.1, and the defendant's sentence was a fine and costs totaling $217. The district court counted the conviction, finding that it was not similar to any of the offenses listed in § 4A1.2. This conclusion increased the defendant's guideline range from 18 to 24 months to 24 to 30 months. Using an approach borrowed from the First Circuit, the Third Circuit held that operating a motor vehicle while possessing an open container is not similar as a matter of elemental comparison to "public intoxication" as defined under Pennsylvania law. *Id.* at 4

9

(applying *United States v. Elmore*, 108 F.3d 23, 27 (3d Cir. 1997)). "Public place," the court held, is not similar to "presence in a 'motor vehicle' . . . located on a highway in this Commonwealth." *Id.* at 6. Further, being "under the influence of alcohol or a controlled substance" is not sufficiently similar to "possession of an open alcoholic beverage container or consum[ption] of a controlled substance." *Id.*

Defendants in the Middle District of Pennsylvania are routinely assessed points for truancy violations where the *parent* is convicted and fined in a local magistrate court. According to the Third Circuit, because the truancy offense arose out of the defendant's "status as an adult responsible for a child, [it] was not 'similar' to a juvenile status offense or truancy in any meaningful way." *See United States v. Jackson*, 169 Fed. Appx. 120, 123 (3d Cir. 2006).

Some courts have thus transformed the meaning of "similar" in § 4A1.2(c)(1) from the common-sense reading of shared characteristics into a tortured exercise requiring elemental identity and approaching the close statutory parsing that one might expect from a court applying the test for determining whether offenses are the same for purposes of double jeopardy. *See Blockburger v. United States*, 284 U.S. 299 (1932). As a result, what should be a common-sense exercise in judgment to determine whether an offense is "similar" has become a restrictive examination leaving little room for exclusion of offenses that are not listed.

In *United States v. Martinez (Clyde)*, 905 F.2d 251 (9th Cir. 1990), the majority used a different approach, one that examines the comparative levels of culpability and the degree to which the unlisted offense indicates a likelihood of recurring criminal conduct. The Ninth Circuit later adopted a second test, defining the phrase "similar to" as "whether the activity underlying the prior offense is similar to the activities underlying the listed offenses." *United States v. Martinez (Carlos)*, 69 F.3d 999 (9th Cir. 1995). Recently, the Ninth Circuit suggested that the two tests applied in the alternative. *See United States v. Hernandez-Hernandez*, 431 F.3d 1212 (9th Cir. 2005).

The Fifth Circuit in *United States v. Hardeman*, 933 F.2d 278 (5th Cir. 1991), adopted "a common sense approach," holding that the courts should inquire into "all possible factors of similarity," in determining whether an unlisted offense is "similar" to a listed offense. These factors include:

> a comparison of punishments imposed for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

*Id.* at 281. Under this test, none of these factors is dispositive, and each comparison is fact-specific. *Id.*

Under these varying approaches, an offense may be counted in some jurisdictions because it fails a strict categorical or culpability analysis but excluded in another because

10

it passes a more expansive test examining all possible factors of similarity. The resulting disparity is unwarranted and defeats a primary purpose of federal sentencing policy.

The Commission should clarify that "similar" does not mean "elementally the same." It should reject the restrictive approach used by some courts, and adopt a common sense approach similar to the one adopted by the Fifth Circuit. We have adapted the Fifth Circuit's approach in our proposed Application Note.

### E. Other minor offenses that should never be counted

In addition to the offenses now listed, there are other minor offenses that do not advance any sentencing purpose. Offenses such as fare evasion, open container violations, panhandling, shoplifting, simple possession of marijuana, and vagrancy should be placed in subsection (c)(2). At the very least, these latter offenses should be added to the list in subsection (c)(1) so that only those sufficiently serious sentences are counted.

Local ordinance violations should never be counted, even when the offense is also a state criminal offense. First, a defendant convicted of a local ordinance violation was not convicted of a state criminal offense. The fact that the offense is similar to a state criminal offense does not necessarily make it more serious, and is otherwise irrelevant.

Second, some courts do not hesitate to expand the category as written in order to count the most minor of local offenses. For example, in the Middle District of Pennsylvania, federal defendants regularly receive criminal history points for local occupancy tax violations arising from failure to pay a $10 yearly occupancy tax. Although failure to pay a local occupancy tax is not a state criminal offense, district courts have held that, because a state statute enables localities to impose the tax, failing to pay the tax is akin to violating a state criminal law. In this way, courts have expanded the language "that are also criminal offenses under state law" to mean "that are authorized by state law."

Third, the varying interpretations of the local ordinance category injects uncertainty into the process, undermining counsel's ability to advise a client regarding criminal history. In a case prosecuted in the District of Iowa, the defendant worked in a bar where he sold alcohol after the bar was closed, a prohibited alcohol sale in violation of a city ordinance. He was charged with violating two separate ordinances, only one of which is similar to a state criminal statute. He pled guilty to that charge, and the other was dismissed. He was sentenced to pay a $120 fine. As a result of this $120 fine and the unintended consequence of pleading to the charge that was similar to a state statute, the defendant's guideline range was increased by fourteen months.

### F. "Sentence served" of more than 60 days as proper measure of "real sentence"

If the Commission decides not to eliminate a distinction among minor offenses based on the sentence imposed, it should apply a "sentence served" test for minor

11

(222)

offenses and increase the minimum term of imprisonment that triggers inclusion to more than sixty days. First, "sentence served" more accurately reflects the seriousness of the offense by reflecting the real punishment imposed. In many jurisdictions, defendants routinely receive a sentence pronounced of 30 days' or more imprisonment for a minor offense, but they actually serve only three or four days. Second, given the potentially grave federal consequences of prior minor offenses, a "sentence served" of more than sixty days is a truer indication of the relative seriousness of the prior offense. Many of these minor offenses are disposed of as part of a package deal, when a defendant in state court is motivated to plead guilty to a number of minor offenses by the promise of a "time served" disposition. This may occur when a defendant is facing a revocation of probation or is unable to post bail for financial reasons. For example, a defendant may face more serious charges in a separate or related case, in which the prosecution encounters difficulties and therefore offers a favorable "time served" disposition alone or in combination with dismissal of a more serious charge.

Setting a higher bar for the type of sentence that will translate a minor offense into criminal history points will ensure that these types of summary dispositions will not inflate a criminal history category. Just as the Commission uses the concept of "real offense conduct" to measure culpability with respect to the appropriate offense level, it should use the concept of "real sentence" for purposes of calculating criminal history.

E.     Minor offenses over three years old or committed prior to age 18

The Commission should amend § 4A1.2(d) so that minor offenses are not counted if they were committed more than three years before the instant offense. Given their nature, minor offenses over three years old are not likely to contribute in any manner to a defendant's future risk of recidivism. At the very least, the Commission should publish its data on this subject so that meaningful dialogue on the subject is possible.

The Commission should also amend subsection (e) so that minor offenses committed before the defendant reached the age of eighteen are never counted. There is no conceivable policy reason why such convictions should increase a defendant's federal criminal history score, and common sense about a juvenile's immature ability to form sound judgments counsels against it. The average adolescent operates with an "underdeveloped sense of responsibility," resulting in "'impetuous and ill-considered actions and decisions.'" *See Roper v. Simmons*, 543 U.S. 551, 569 (2005) (citation omitted). "In recognition of the comparative immaturity and irresponsibility of juveniles, almost every State prohibits those under 18 years of age from voting, serving on juries, or marrying without parental consent." *Id.* Juveniles are more vulnerable than adults to negative influences and peer pressure, due in part to the "prevailing circumstance that juveniles have less control, or less experience with control, over their own environment." *Id.* (citing Steinberg & Scott, *Less Guilty by Reason of Adolescence: Developmental Immaturity, Diminished Responsibility, and the Juvenile Death Penalty*, 58 Am. Psychologist 1009, 1014 (2003)). Given that the actions of a juvenile often result from an unfixed character and "transitory personality traits," *see id.*, prior juvenile convictions for minor offenses should not be counted without the clearest empirical evidence of their predictive value.

12

(223)

## II.   RELATED CASES

The Commission expected that there would be instances in which the definition of "related cases" in Application Note 3 of § 4A1.2 would be "overly broad." In practice, the opposite is true: the provision has been interpreted so narrowly by the courts that it is now virtually impossible to convince a sentencing judge that two prior sentences were "related." In addition, the various formulations for determining whether two cases are related adds unnecessary complexity to the Guidelines. The current definition is both far too restrictive and far too complex. Principles of fairness and simplicity suggest that the definition of "related cases" should be aligned with the more expansive definition of "relevant conduct" in § 1B1.3, and the meaning of "consolidated for trial or sentencing" should be clarified.

The Commission should amend Application Note 3 by replacing "no intervening arrest" with "no intervening conviction" and replacing (A) and (B) with a cross-reference to the definition of "relevant conduct" under the provisions of § 1B1.3(a)(2) and Application Note 9 to that guideline, so that prior sentences are "related" if they would constitute relevant conduct *with respect to each other* under those provisions. The Commission should retain (C), but add the term "functionally consolidated for trial or sentencing" and define it as proposed below. In addition, because § 4A1.1(f) does not predict increased risk of recidivism, the Commission should eliminate subsection (f) and the reference to it in Application Note 3.

We propose the following language:

*Related Cases. Prior sentences are not considered related if they were for offenses that were separated by an intervening conviction (i.e., the defendant was convicted of the first offense prior to committing the second offense). Otherwise, prior sentences are considered related (A) if they resulted from conduct that would be considered relevant conduct with respect to each other under the provisions of §1B1.3(a)(2) and comment ( n. 9) (Relevant Conduct), or (B) if they were consolidated for trial or sentencing or functionally consolidated for trial or sentencing. "Functionally consolidated for trial or sentencing" includes prior sentences imposed pursuant to a single plea agreement or in a single sentencing proceeding.*

Our proposed amendment sets forth a streamlined approach, allowing courts to bypass the potentially more complicated "relevant conduct" inquiry whenever consolidation can be readily ascertained, while leaving open the opportunity for a fair assessment of whether the conduct reflected in two convictions is related when necessary.

In addition, this approach is a more accurate measure of assessing past patterns of criminal behavior. By providing that prior offenses are not related if they were separated by an intervening conviction, our proposal ensures that convictions will not be considered related if they demonstrate that conviction and punishment failed to deter repeated criminal behavior. At the same time, it would reflect that repeated arrests within a short period of time – which may result from police harassment – do not necessarily show an

13

increased risk of recidivism. This approach also would further the goal of simplification by reducing the number of different tests for similar concepts.

By tying the definition of related cases to the relevant conduct rules, our proposal would alleviate the disconnect between the use of uncharged or acquitted conduct to increase punishment under § 1B1.3 and the treatment of the same kind of conduct as "unrelated" for purposes of criminal history.

Unlike the use of relevant conduct rules in setting offense levels, which we continue to oppose, the rules we propose would not increase offense levels based on conduct that did not result in a criminal charge or conviction, but instead would result in a more realistic calculation of criminal history based on actual convictions. Unlike relevant conduct, this will not implicate due process concerns. Indeed, if the expansive meaning of relevant conduct can be used to increase offense levels, then it should be available to limit the impact of prior sentences in determining criminal history.

Finally, our proposal addresses the complexities, disparities, and restrictive interpretations created by current Application Note 3, which we discuss more fully below.

### A. "Occurred on the same occasion"

Some of the cases interpreting subsection (A) have emphasized a temporal aspect that requires something akin to simultaneity. The passage of a mere ninety minutes between seemingly related offenses often will mean that they did not "occur on the same occasion." *See, e.g., United States v. Jones*, 899 F.2d 1097, 1101 (11th Cir. 1990), *overruled on other grounds, United States v. Morrill*, 984 F.2d 1136 (11th Cir. 1993) (*en banc*) (robbery attempts at two different locations within one-and-one-half hours of each other did not occur on the same occasion).

In another case, the Fifth Circuit engaged in unduly extensive and complex analysis before concluding that three offenses occurring on the same day – drunk driving, driving with a suspended license, and failure to identify oneself to a police officer – were related. The court examined temporal proximity, spatial proximity, and the timing of the formation of *mens rea* in order to reach the conclusion that the offenses were related. *United States v. Johnson*, 961 F.2d 1188, 1189 (5th Cir. 1992). In a later case, the Fifth Circuit engaged in a similarly extensive analysis because "the extent of the temporal separation between commissions [is] controlling for purposes of the same-occurrence prong, and even then such separation must be viewed in light of other factors such as spatial separation, identity or non-identity of offenses, and the like." *United States v. Moreno-Arredondo*, 255 F.3d 198, 207 (5th Cir. 2001).

These cases demonstrate that the test is so restrictive that it it is either impossible to meet or requires the court to engage in ludicrously complex maneuvers to reach a conclusion that would go without saying if the question were whether the offenses were "relevant conduct." Our proposal avoids these problems by replacing subsection (A) with a reference to Application Note 9 of § 1B1.3.

14

## B.    "Single common scheme or plan"

Cases are related under subsection (B) if the prior sentences resulted from offenses that "were part of a single common scheme or plan." Differing interpretations of the meaning of this term have resulted in a circuit split. In *United States v. Irons*, 196 F.3d 634 (6th Cir. 1999), the Sixth Circuit joined the Third, Fifth, and Ninth Circuits in following the Seventh Circuit's interpretation that crimes are part of the same scheme or plan only if the offenses were jointly planned, or, at a minimum, the commission of one offense necessarily required the commission of another. *Id.* at 828 (following *United States v. Ali*, 951 F.2d 827, 828 (7th Cir. 1992)). Under this view, offenses committed during a "crime spree" are not related unless (1) they were jointly planned at their inception, or (2) the commission of one offense entailed the commission of another. *See Irons*, 196 F.3d at 637-38.

In *United States v. Carter*, 283 F.3d 755 (6th Cir. 2002), however, the Sixth Circuit recognized that this cramped view of relatedness under subsection (B) for purposes of criminal history conflicts with the liberal and expansive view of relevant conduct under § 1B1.3. *Id.* at 758. According to the court, "the goal of reasonable uniformity sought by the Sentencing Guidelines is undermined with regard to the differing applications of U.S.S.G. § 4A1.2(a)(2). The treatment of the issue by the various Courts of Appeal evidences the lack of consistency and, therefore, the lack of uniformity in the application of this provision of the Sentencing Guidelines. This Court urges the Sentencing Commission to review U.S.S.G. § 4A1.2(a)(2) with regard to the concerns herein expressed." *Id.* at 761.

The Seventh Circuit has also acknowledged the illogic in the differing interpretations of the phrase "common scheme or plan" in §§ 4A1.2 and 1B1.3(a)(2). *See United States v. Walls*, 59 Fed. Appx. 876 (7th Cir. 2003). Because its own precedent foreclosed applying the same interpretation, the court suggested that the Commission should clarify the matter. *Id.* at 879 ("Although the application of the career offender provision can lead to harsh results, and has done so here, it is a matter that the Sentencing Commission might want to address.").

Some courts have opposed interpreting "common scheme or plan" the same way in §§ 4A1.2 and 1B1.3 based on the view that "different considerations" animate the two provisions, and noting that the word "single" appears in § 4A1.2, but not in § 1B1.3. *See, e.g., United States v. Berry*, 212 F.3d 391, 394-95 (8th Cir. 2000) (elaborating the "different considerations"). The *Berry* court explained: "Addition of the word 'single' suggests an intent to narrow the concept of 'common scheme or plan.' It points strongly in the direction of the Seventh Circuit's view that two prior offenses must have been *jointly* planned to be 'related sentences' under § 4A1.2(a)(2)." *Id.* at 395.

Other circuits have held that subsection (B) should be given the same meaning as relevant conduct under § 1B1.3. *See United States v. LaBarbara*, 129 F.3d 81, 86 (2d Cir. 1997); *United States v. Breckenridge*, 93 F.3d 132, 139 (4th Cir. 1996); *United States v. Mullens*, 65 F.3d 1560, 1565 (11th Cir. 1995)). In *Breckenridge*, the Fourth Circuit

15

summarized the factors considered by courts: "In deciding whether offenses are part of a common scheme or plan, courts have looked to whether the crimes were committed within a short period of time, in close geographic proximity, involved the same substantive offense, were directed at a common victim, were solved during the course of a single criminal investigation, shared a similar modus operandi, were animated by the same motive, and were tried and sentenced separately only because of an accident of geography." *See Breckenridge*, 93 F.3d at 139; *see also United States v. Brothers*, 316 F.3d 120, 123-24 (2d Cir. 2003) (summarizing factors).

These differing interpretations produce unwarranted inconsistency in sentences, and engender confusion. Our proposal adopts the fairer and more sensible approach of those courts that have interpreted the phrase "common scheme or plan" to mean the same thing in subsection § 4A1.2, comment. (n.3(B)) as it does under § 1B1.3(a)(2).

C. "Consolidated for trial or sentencing"

Subsection (C) provides that prior sentences are "related" if they were "consolidated for trial or sentencing." Some courts have held that this includes cases that were "functionally consolidated," but that term has been narrowly construed over the years. Courts now very rarely (if ever) find cases consolidated for sentencing absent a formal order of consolidation. Such an order is uncommon or nonexistent in many states, making such a finding impossible. In *Buford v. United States*, 532 U.S. 59 (2001), the Supreme Court suggested that the Commission might bring some consistency into the determination of "functional consolidation." In rejecting the petitioner's argument that consistency would result from *de novo* review of the district court's finding that her prior sentences were not functionally consolidated, the Court stated:

> [T]he Sentencing Commission itself gathers information on the sentences imposed by different courts, it views the sentencing process as a whole, it has developed a broad perspective on sentencing practices throughout the Nation, and it can, by adjusting the Guidelines or the application notes, produce more consistent sentencing results among similarly situated offenders sentenced by different courts. Insofar as greater uniformity is necessary, the Commission can provide it.

*Id.* at 66. In the absence of overarching guidance from the Commission, defendants face what has become an impossible hurdle.

Some circuits require formal consolidation in the form of an order or some other "indicium of formal consolidation" and do not recognize functional consolidation for arguably related cases. *See, e.g., United States v. Martins*, 413 F.3d 139 (1st Cir. 2005); *United States v. Mills*, 375 F.3d 689, 691 n.4 (8th Cir. 2004); *United States v. Piggie*, 789, 796 (8th Cir. 2003). Unfortunately, several jurisdictions, including Massachusetts and New Hampshire, do not employ any form of formal consolidation. For defendants whose prior convictions arise in these jurisdictions, relatedness can never be proven under this prong. As a result, the guidelines institutionalize a categorical disparity.

16

In other circuits, "functional consolidation" exists in theory, but can hardly be proven. For example, in the Fifth Circuit, cases will be considered consolidated if there is "some factual connexity between them, or else a finding that the cases were merged for trial or sentencing." *United States v. Huskey*, 137 F.3d 283, 288 (5th Cir. 1998). Courts there have consistently required either a formal order of consolidation or the listing of two offenses in the same indictment under the same docket number. *See, e.g., United States v. Hayes*, 341 F.3d 385 (5th Cir. 2003); *United States v. Metcalf*, 898 F.2d 43, 46 (5th Cir. 1990); *United States v. Kates*, 174 F.3d 590, 584 (5th Cir. 1999). However, Texas courts rarely enter formal orders of consolidation, likely due to the fact that under Texas law, such orders are unnecessary. If multiple counts arising out of a single "criminal episode" are presented in a single trial or plea proceeding, then they are considered under Texas law to be consolidated. *See LaPorte v. State*, 840 S.W.2d 412 415 (Tex. Crim. App, 1992).

For reasons apparently connected to the tumultuous history of Texas state law on joinder and defects in charging instruments, it is not unusual in multi-count cases in Texas state court to see a separate charging instrument with a separate docket number for each individual count, even in cases in which the offenses could have been joined in a single charging instrument. These cases are commonly disposed of in a single plea proceeding before the same judge, thus resulting in consolidation under state law and concurrent sentences. *See* Aff. of El Paso Public Defender, July 14, 2006, attached as Exhibit 1. Despite this, the Fifth Circuit does not consider the cases consolidated for purposes of determining whether they are related.

Although other circuits do not require a formal order of consolidation, they have nevertheless developed a stringent test for finding "functional consolidation" that approaches a requirement of a formal indication of consolidation. These courts hold that "there is no functional consolidation when offenses proceed to sentencing under separate docket numbers, cases are not factually related, and there was no order of consolidation[.] There must be some explicit indication that the trial court intended to consolidate the prior convictions." *United States v. Carson*, 469 F.3d 528, 531 (6th Cir. 2006) (internal citations and quotations omitted). Even after *Buford*, the Seventh Circuit has held that simultaneous disposition merely for the sake of administrative convenience is not consolidation, and that "in the absence of a formal order of consolidation, we will deem sentences functionally consolidated only where there is a showing on the record of the sentencing hearing that the sentencing judge considered the cases sufficiently related for consolidation and effectively entered one sentence for the multiple convictions." *United States v. Best*, 250 F.3d 1084, 1095 (7th Cir. 2001).

In the absence of uniform state policies and practices, the Commission should set forth a simpler and more flexible test for consolidation in Application Note 3 so that, at the very least, prior sentences imposed pursuant to a single plea agreement or in a single sentencing proceeding will be considered "related" under § 4A1.2. Where such circumstances do not exist, courts should be permitted to take a number of factors into account, such as consecutive indictment or complaint numbers, or same day scheduling of a plea hearing, trial or sentencing hearing, to determine whether cases are related.

17

## D.    Uncounted crimes of violence

As set forth in Part I, some state misdemeanor offenses are counted as felony crimes of violence because they are punishable by a term of imprisonment greater than one year.  The harsh and disparate effects of this are felt throughout the guidelines, including the determination of whether cases are related.  The Commission adds one point for each prior conviction of a crime of violence that is otherwise uncounted because it is "related" under Application Note 3 of § 4A1.2.  U.S.S.G. § 4A1.1(f).  In contrast, the Parole Commission's Salient Factor Score, which is a better predictor of recidivism than Criminal History Score under the guidelines, has no violence component. *See* U.S. Sentencing Commission, *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score* at 7.  Not only does § 4A1.1(f) unfairly inflate some defendants' criminal history scores, but its predictive power is statistically insignificant. *See id.* at 7, 11 n. 40, 15.  Therefore, it should be deleted.

Very truly yours,

Jon M. Sands
Federal Public Defender
Chair, Federal Defender Sentencing Guidelines Committee

AMY BARON-EVANS
ANNE BLANCHARD
SARA E. NOONAN
JENNIFER COFFIN
Sentencing Resource Counsel

cc:     Hon. Ruben Castillo
        Hon. William K. Sessions III
        Commissioner John R. Steer
        Commissioner Michael E. Horowitz
        Commissioner Beryl A. Howell
        Commissioner Dabney Friedrich
        Commissioner *Ex Officio* Edward F. Reilly, Jr.
        Commissioner *Ex Officio* Benton J. Campbell
        Alan Dorhoffer, Senior Staff Attorney
        Judy Sheon, Staff Director
        Ken Cohen, Staff Counsel

18